# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 15, 2007                    Decided August 3, 2007

No. 06-3105

UNITED STATES OF AMERICA,
APPELLEE

v.

RAYBURN HOUSE OFFICE BUILDING,
ROOM 2113, WASHINGTON, D.C. 20515,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 06mj00231)

———

*Robert P. Trout* argued the cause for appellant. With him on the briefs were *Amy Berman Jackson* and *Gloria B. Solomon*.

*James Hamilton* and *Robert V. Zener* were on the brief for *amici curiae* Thomas S. Foley, et al. in support of appellant.

*Scott Palmer*, *Elliot S. Berke*, *Reid Stuntz*, and *Philip Kiko*, appearing pro se, were on the brief as *amici curiae* in support of appellant.

*David H. Remes* and *Richard D. Dietz* were on the brief for *amicus curiae* Abner J. Mikva in support of appellant and for reversal.

2

*Gregory L. Poe* was on the brief for *amici curiae* Stanley M. Brand, et al. in support of appellant.

*Michael R. Dreeben*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, *Darryl Joseffer*, Assistant to the Solicitor General, U.S. Department of Justice, *Stephan E. Oestreicher, Jr.* and *Charles E. Duross*, Attorneys, and *Roy W. McLeese, III*, Assistant U.S. Attorney.

*Melanie Sloan* and *Anne L. Weismann* were on the brief for *amicus curiae* Citizens for Responsibility and Ethics in Washington supporting affirmance. *Daniel J. Popeo, Paul D. Kamenar, Perry O. Barber* were on the brief for *amicus curiae* Washington Legal Foundation in support of appellee and urging affirmance.

*Paul J. Orfanedes* and *Meredith L. Di Liberto* were on the brief for *amicus curiae* Judicial Watch, Inc. in support of appellee urging affirmation.

Before: GINSBURG, *Chief Judge*, and HENDERSON and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

Opinion concurring in the judgment filed by *Circuit Judge* HENDERSON.

ROGERS, *Circuit Judge*: This is an appeal from the denial of a motion, filed pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, seeking the return of all materials seized by the Executive upon executing a search warrant for non-legislative materials in the congressional office of a sitting

3

Member of Congress.  The question on appeal is whether the procedures under which the search was conducted were sufficiently protective of the legislative privilege created by the Speech or Debate Clause, Article I, Section 6, Clause 1 of the United States Constitution.  Our precedent establishes that the testimonial privilege under the Clause extends to non-disclosure of written legislative materials.  *See Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 420 (D.C. Cir. 1995).  Given the Department of Justice's voluntary freeze of its review of the seized materials and the procedures mandated on remand by this court in granting the Congressman's motion for emergency relief pending appeal, the imaging and keyword search of the Congressman's computer hard drives and electronic media exposed no legislative material to the Executive, and therefore did not violate the Speech or Debate Clause, but the review of the Congressman's paper files when the search was executed exposed legislative material to the Executive and accordingly violated the Clause.  Whether the violation requires, as the Congressman suggests, the return of all seized items, privileged as well as non-privileged, depends upon a determination of which documents are privileged and then, as to the non-privileged documents, a balancing of the separation of powers underlying the Speech or Debate Clause and the Executive's Article II, Section 3 law enforcement interest in the seized materials.  The question of whether the seized evidence must be suppressed under the Fourth Amendment is not before us.

We hold that the compelled disclosure of privileged material to the Executive during execution of the search warrant for Rayburn House Office Building Room 2113 violated the Speech or Debate Clause and that the Congressman is entitled to the return of documents that the court determines to be privileged under the Clause.  We do not, however, hold, in the absence of a claim by the Congressman that the operations of his

4

office have been disrupted as a result of not having the original versions of the non-privileged documents, that remedying the violation also requires the return of the non-privileged documents. The Congressman has suggested no other reason why return of such documents is required pursuant to Rule 41(g) and, in any event, it is doubtful that the court has jurisdiction to entertain such arguments following the return of the indictment against him while this appeal was pending.

## I.

On May 18, 2006, the Department of Justice filed an application for a search warrant for Room 2113 of the Rayburn House Office Building, the congressional office of Congressman William J. Jefferson. The attached affidavit of Special Agent Timothy R. Thibault of the Federal Bureau of Investigation ("FBI") described how the apparent victim of a fraud and bribery scheme who had come forward as a cooperating witness led to an investigation into bribery of a public official, wire fraud, bribery of a foreign official, and conspiracy to commit these crimes. The investigation included speaking with the Congressman's staff, one of whom had advised that records relevant to the investigation remained in the congressional office. Based on the investigation, the affiant concluded that there was probable cause to believe that Congressman Jefferson, acting with other targets of the investigation, had sought and in some cases already accepted financial backing and or concealed payments of cash or equity interests in business ventures located in the United States, Nigeria, and Ghana in exchange for his undertaking official acts as a Congressman while promoting the business interests of himself and the targets. Attachments A and B, respectively, described Room 2113 and the non-legislative evidence to be seized. The affiant asserted that the Executive had exhausted all other reasonable methods to obtain these records in a timely manner.

5

The warrant affidavit also described "special procedures" adopted by the Justice Department prosecutors overseeing the investigation. According to the affidavit, these procedures were designed: (1) "to minimize the likelihood that any potentially politically sensitive, non-responsive items in the Office will be seized and provided to the [p]rosecution [t]eam," Thibault Aff. ¶ 136, and (2) "to identify information that may fall within the purview of the Speech or Debate Clause privilege, U.S. Const., art. I, § 6, cl. 1 or any other pertinent privilege," *id*. Essentially, the procedures called for the FBI agents conducting the search to "have no substantive role in the investigation" and upon reviewing and removing materials from Room 2113, not to reveal politically sensitive or non-responsive items "inadvertently seen . . . during the course of the search." *Id.* ¶¶ 137-38. The FBI agents were to review and seize paper documents responsive to the warrant, copy all electronic files on the hard drives or other electronic media in the Congressman's office, and then turn over the files for review by a filter team consisting of two Justice Department attorneys and an FBI agent. *Id.* ¶ 139. The filter team would determine: (1) whether any of the seized documents were not responsive to the search warrant, and return any such documents to the Congressman; and (2) whether any of the seized documents were subject to the Speech or Debate Clause privilege or other privilege. Materials determined to be privileged or not responsive would be returned without dissemination to the prosecution team. Materials determined by the filter team not to be privileged would be turned over to the prosecution team, with copies to the Congressman's attorney within ten business days of the search. Materials determined by the filter team to be potentially privileged would, absent the Congressman's consent to Executive use of a potentially privileged document, be submitted to the district court for review, with a log and copy of such documents provided to the Congressman's attorney within 20 business days of the search. The filter team would make

6

similar determinations with respect to the data on the copied computer hard drives, following an initial electronic screening by the FBI's Computer Analysis and Response Team.

The district court found probable cause for issuance of the search warrant and signed it on May 18, 2006, directing the search to occur on or before May 21 and the U.S. Capitol Police to "provide immediate access" to Room 2113. Beginning on Saturday night, May 20, more than a dozen FBI agents spent about 18 hours in Room 2113. The FBI agents reviewed every paper record and copied the hard drives on all of the computers and electronic data stored on other media in Room 2113. The FBI agents seized and carried away two boxes of documents and copies of the hard drives and electronic data. According to the brief for the Executive, the Office of the Deputy Attorney General directed an immediate freeze on any review of the seized materials. *See* Appellee's Br. at 10.

On May 24, 2006, Congressman Jefferson challenged the constitutionality of the search of his congressional office and moved for return of the seized property pursuant to FED. R. CRIM. P. 41(g). He argued, *inter alia*, that the issuance and execution of the search warrant violated the Speech or Debate Clause and sought an order enjoining FBI and Justice Department review or inspection of the seized materials. The following day, the President of the United States directed the Attorney General, acting through the Solicitor General, to preserve and seal the records and to make sure no use was made of the materials and that no one had access to them; this directive would expire on July 9, 2006.

On July 10, 2006, the district court denied the Congressman's motion for return of the seized materials. Concluding that execution of the warrant "did not impermissibly interfere with Congressman Jefferson's legislative activities,"

7

*In re Search of the Rayburn House Office Bldg. Room No. 2113 Washington, D.C. 20515*, 432 F. Supp. 2d 100, 113 (D.D.C. 2006), the district court noted that the warrant sought only materials that were outside of the "legitimate legislative sphere," *id*. The district court rejected the Congressman's claim that he had a right to remove documents he deemed privileged before execution of the warrant, reasoning that although "some privileged material was incidently captured by the search" and was subject to "incidental review," "the preconditions for a properly administered warrant that seeks only unprivileged material that falls outside the sphere of legitimate legislative activity are sufficient to protect against" undue Executive intrusion. *Id*. at 114. The Justice Department, therefore, could regain custody of the seized materials and resume review as of July 10, 2006. *See id.* at 119. On July 11, 2006, Congressman Jefferson filed a notice of appeal and a motion for a stay pending appeal. According to the brief for the Executive, the Attorney General ordered the FBI to regain custody of the seized materials and imposed an immediate freeze on any review until the district court and this court considered the Congressman's request for a stay pending appeal. *See* Appellee's Br. at 13. The district court denied a stay on July 19, 2006. *See In re Search of the Rayburn House Office Bldg. Room No. 2113, Washington, D.C. 20515*, 434 F. Supp. 2d 3 (D.D.C. 2006).

This court, upon consideration of the Congressman's emergency motion for a stay pending appeal filed on July 20, 2006, enjoined the United States, acting through the Executive, from resuming its review of the seized materials. *See* Order of July 25, 2006. Three days later, the court remanded the record to the district court to make findings regarding "which, if any, documents (physical or electronic) removed . . . from [the] Congressman['s] . . . office pursuant to a search warrant executed on May 20, 2006, are records of legislative acts." Order of July 28, 2006 ("Remand Order"). The court instructed

8

the district court to: (1) copy and provide the copies of all the seized documents to the Congressman; (2) "using the copies of computer files made by [the Executive], search for the terms listed in the warrant, and provide a list of responsive records to Congressman Jefferson"; (3) provide the Congressman an opportunity to review the records and, within two days, to submit, *ex parte*, any claims that specific documents are legislative in nature; and (4) "review *in camera* any specific documents or records identified as legislative and make findings regarding whether the specific documents or records are legislative in nature." Remand Order at 1. In the meantime, the court enjoined the Executive from reviewing any of the seized documents pending further order of this court. Subsequently, the court allowed the Executive to review seized materials that the Congressman "has conceded on remand are not privileged under the Speech or Debate Clause." Order of Nov. 14, 2006. The court ordered expedition of this appeal, *id.*, and oral argument was heard on May 15, 2007.

On June 4, 2007, the grand jury returned a sixteen-count indictment against Congressman Jefferson in the Eastern District of Virginia. *United States v. Jefferson*, No. 07-0209 (E.D. Va. indictment filed June 4, 2007). The indictment included charges of racketeering, solicitation of (and conspiracy to solicit) bribes, money laundering, wire fraud, and obstruction of justice.[1] Trial

---

[1] The indictment charged: Count 1, Conspiracy to Solicit Bribes by a Public Official, Deprive Citizens of Honest Services by Wire Fraud, and Violate the Foreign Corrupt Practices Act, 18 U.S.C. § 371; Count 2, Conspiracy to Solicit Bribes by a Public Official, Deprive Citizens of Honest Services by Wire Fraud, *id.* § 371; Counts 3 & 4, Solicitation of Bribes by a Public Official, *id.* § 201(b)(2)(A); Counts 5 to 10, Scheme to Deprive Citizens of Honest Services by Wire Fraud, *id.* §§ 1343 and 1346; Count 11, Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(a); Counts 12-14, Money

9

is scheduled to begin with jury selection in January 2008. This court's jurisdiction of the Congressman's appeal rests on the collateral order doctrine. *See United States v. Rostenkowski*, 59 F.3d 1291, 1296-1300 (D.C. Cir. 1995). Neither party suggests that the return of the indictment divests this court of jurisdiction or renders this appeal moot or urges that the court not proceed to decide this appeal.[2] *Cf. In re 3021 6th Ave. N., Billings, MT v. United States*, 237 F.3d 1039, 1041 (9th Cir. 2001). We agree, for the Executive retains in its possession seized materials, including complete copies of every computer hard drive in Room 2113, which contain legislative material.[3] *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000); *see also Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 74 F.3d 1308, 1311 (D.C. Cir.), *vacated on other grounds*, 519 U.S. 1 (1996). Letting the district court's decision stand until after the Congressman's trial would, if the Congressman is correct, allow the Executive to review privileged material in violation of the Speech or Debate Clause.

## II.

The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Members of Congress] shall not be questioned in any other Place." U.S. CONST. art. I, § 6, cl. 1. The version of the Clause adopted by the Founders closely resembles the language adopted in the English Bill of Rights of

---

Laundering, 18 U.S.C. § 1957; Count 15, Obstruction of Justice, 18 U.S.C. § 1512(c)(1); Count 16, Racketeer Influenced Corrupt Organization, Pattern of Racketeering Activity (RICO), *id*. § 1962(c).

[2] *See* Letter from Roy W. McLeese III, Assistant United States Attorney, to Mark J. Langer, Clerk (June 7, 2007); Letter from Robert P. Trout, Esquire, to Mark J. Langer, Clerk (June 11, 2007).

[3] Letter from Robert P. Trout, *supra* note 2.

10

1689, which came out of the long struggle for governmental
supremacy between the English monarchs and the Parliament,
during which the criminal and civil law were used to intimidate
legislators. By the time of the Constitutional Convention, the
privilege embodied in the Speech or Debate Clause was
"recognized as an important protection of the independence and
integrity of the legislature," *United States v. Johnson*, 383 U.S.
169, 178 (1966), and was to serve as a protection against
possible "prosecution by an unfriendly executive and conviction
by a hostile judiciary," *id.* at 179.

In defining the protections afforded by the Clause, the
Supreme Court has limited the scope to conduct that is an
integral part of "the due functioning of the legislative process."
*United States v. Brewster*, 408 U.S. 501, 513 (1972). The
Congressman does not dispute that congressional offices are
subject to the operation of the Fourth Amendment and thus
subject to a search pursuant to a search warrant issued by the
federal district court. The Executive acknowledges, in
connection with the execution of a search warrant, that there is
a role for a Member of Congress to play in exercising the
Member's rights under the Speech or Debate Clause. The
parties disagree on precisely when that should occur and what
effect any violation of the Member's Speech or Debate rights
should have. The Congressman contends that the exercise of his
privilege under the Clause must precede the disclosure of the
contents of his congressional office to agents of the Executive
and that any violation of the privilege requires return of all of
the seized materials. The Executive offers that the special
procedures described in the warrant affidavit "are more than
sufficient to protect Rep[resentative] Jefferson's rights . . . under
the Clause," Appellee's Br. at 15-16, and that any violation of
the privilege does not deprive the Executive of the right to retain
all non-privileged materials within the scope of the search
warrant.

11

The Supreme Court has not spoken to the precise issue at hand. May 20-21, 2006 was the first time a sitting Member's congressional office has been searched by the Executive. The Court has made clear, however, in the context of a grand jury investigation, that "[t]he Speech or Debate Clause was designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch." *Gravel v. United States*, 408 U.S. 606, 616 (1972). Although in *Gravel* the Court held that the Clause embraces a testimonial privilege, *id.* at 616, to date the Court has not spoken on whether the privilege conferred by the Clause includes a non-disclosure privilege. However, this court has.

Beginning with the observation that the prohibition in the Speech or Debate Clause is "deceptively simple," this court held in *Brown & Williamson*, 62 F.3d at 415, that the Clause includes a non-disclosure privilege, *id.* at 420. Noting that the purpose of the Speech or Debate Clause is "'to insure that the legislative function the Constitution allocates to Congress may be performed independently,' without regard to the distractions of private civil litigation or the periods of criminal prosecution," *id.* at 415 (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975)), the court rejected the view that the testimonial immunity of the Speech or Debate Clause applies only when Members or their aides are personally questioned:

> Documentary evidence can certainly be as revealing as oral communications – even if only indirectly when, as here, the documents in question . . . do not detail specific congressional actions. But indications as to what Congress is looking at provide clues as to what Congress is doing, or might be about to do — and this is true whether or not the documents are sought for the purpose of inquiring into (or frustrating) legislative

12

> conduct or to advance some other goals . . . . We do not share the Third Circuit's conviction that democracy's "limited toleration for secrecy" is inconsistent with an interpretation of the Speech or Debate Clause that would permit Congress to insist on the confidentiality of investigative files.

*Id*. at 420. As "[d]iscovery procedures can prove just as intrusive"as naming Members or their staffs as parties to a suit, *id*. at 418 (italics omitted), the court held that "[a] party is no more entitled to compel congressional testimony — or production of documents — than it is to sue congressmen, " *id*. at 421. Further, the court noted, citing *Eastland*, 421 U.S. at 509, that when the privilege applies it is absolute. *Brown & Williamson*, 62 F.3d at 416. As such, "if the touchstone is interference with legislative activities," then "the nature of the use to which documents will be put — testimonial or evidentiary — is immaterial." *Id*. at 421. In the same vein, the court indicated that the degree of disruption caused by probing into legislative acts is immaterial, *id*. at 419; *see also MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 860 (D.C. Cir. 1988).

Thus, our opinion in *Brown & Williamson* makes clear that a key purpose of the privilege is to prevent intrusions in the legislative process and that the legislative process is disrupted by the disclosure of legislative material, regardless of the use to which the disclosed materials are put. *See* 62 F.3d at 419. The bar on compelled disclosure is absolute, *see Eastland*, 421 U.S. at 503, and there is no reason to believe that the bar does not apply in the criminal as well as the civil context. The Executive does not argue otherwise; the search warrant sought only materials not protected by the Speech or Debate Clause. Although *Brown & Williamson* involved civil litigation and the documents being sought were legislative in nature, the court's

13

discussion of the Speech or Debate Clause was more profound and repeatedly referred to the functioning of the Clause in criminal proceedings. *See, e.g.*, *Brown & Williamson*, 62 F.3d at 416.[4]

The search of Congressman Jefferson's office must have resulted in the disclosure of legislative materials to agents of the Executive. Indeed, the application accompanying the warrant contemplated it. In order to determine whether the documents were responsive to the search warrant, FBI agents had to review all of the papers in the Congressman's office, of which some surely related to legislative acts. This compelled disclosure clearly tends to disrupt the legislative process: exchanges between a Member of Congress and the Member's staff or among Members of Congress on legislative matters may legitimately involve frank or embarrassing statements; the possibility of compelled disclosure may therefore chill the exchange of views with respect to legislative activity. This chill runs counter to the Clause's purpose of protecting against disruption of the legislative process.

The Executive and the district court appear to have proceeded on the premise that the scope of the privilege narrows when a search warrant is at issue. In the district court's view, the Speech or Debate Clause was not implicated by execution of the search warrant because a seizure of documents did not

---

[4] The court also acknowledged that the Supreme Court's "sensitivities" in *Gravel*, 408 U.S. 614, "to the existence of criminal proceedings against persons other than Members of Congress at least suggest that the testimonial privilege might be less stringently applied when inconsistent with a sovereign interest." *Brown & Williamson*, 62 F.3d at 419-20. As we note below, this possibility is not applicable to the present case.

14

involve a testimonial element.  *See Rayburn*, 432 F. Supp. 2d at
111-12.  Both also emphasized that the search warrant sought
only non-privileged materials as a basis for distinguishing
*Brown & Williamson*, and looked to the procedural protections
afforded by the issuance of a valid search warrant available only
in criminal investigations as eliminating any threat to
Congress's capacity to function effectively.  Our concurring
colleague takes much the same approach, failing to distinguish
between the lawfulness of searching a congressional office
pursuant to a search warrant and the lawfulness of the manner in
which the search is executed in view of the protections afforded
against compelled disclosure of legislative materials by the
Speech or Debate Clause.  The  considerations voiced by our
concurring colleague and the district court may demonstrate
good faith by the Executive, but they fail to adhere to this
court's interpretation of the scope of the testimonial privilege
under the Speech or Debate Clause, much less to the Supreme
Court's interpretation of what constitutes core legislative
activities, *see Brewster*, 408 U.S. at 526, and the history of the
Clause.  While the Executive characterizes what occurred as the
"incidental review of arguably protected legislative materials,"
Appellee's Br. at 15, it does not deny that compelled review by
the Executive occurred, nor that it occurred in a location where
legislative materials were inevitably to be found, nor that some
impairment of legislative deliberations occurred.

Reliance by the Executive and the district court on *Zurcher
v. Stanford Daily*, 436 U.S. 547, 566-67 (1978), is misplaced.
There, the Supreme Court rejected the argument that the First
Amendment imposed a bar to third-party search warrants absent
a prior opportunity by the press to litigate the state's entitlement
to the material before it is turned over or seized.  However, in
*Zurcher*, the Supreme Court did not address whether a particular
search was invalid because it was unconstitutional in its design
and implementation; nor did it involve a privilege that

15

absolutely shields records from non-voluntary disclosure.
Contrary to the Executive's understanding on appeal, it is
incorrect to suggest that Congressman Jefferson's position is
that he was entitled to prior notice of the search warrant before
its execution, without regard to the Executive's interests in law
enforcement.  The Congressman makes clear in his brief that he
is not suggesting advance notice is required by the Constitution
before Executive agents arrive at his office.  *See* Appellant's Br.
at 36.  Rather he contends legislative and executive interests can
be accommodated without such notice, as urged, for example by
the Deputy Counsel to the House of Representatives: "We're not
contemplating advance notice to the [M]ember to go into his
office to search his documents before anyone shows up," but
rather that "[t]he Capitol [P]olice would seal the office so that
nothing would go out of that office and then the search would
take place with the [M]ember there."  Tr. of Hr'g, June 16,
2006, at 35; *see* Appellant's Br. at 36.  Neither does the
Congressman maintain that the Speech or Debate Clause
protects unprivileged evidence of unprivileged criminal conduct.
Nor has the Congressman argued that his assertions of privilege
could not be judicially reviewed, only that the warrant
procedures in this case were flawed because they afforded him
no opportunity to assert the privilege before the Executive
scoured his records.  *See* Appellant's Br. at 37.

The special procedures outlined in the warrant affidavit
would not have avoided the violation of the Speech or Debate
Clause because they denied the Congressman any opportunity
to identify and assert the privilege with respect to legislative
materials before their compelled disclosure to Executive agents.
Indeed, the Congressman, his attorney, and counsel for the
House of Representatives were denied entry into Room 2113
once the FBI arrived.  The special procedures described in the
warrant affidavit called for review by FBI agents and the several
members of the Justice Department filter team before the

16

Congressman would be afforded an opportunity to identify potentially privileged materials. This procedure is significantly different even from those the Executive has on occasion afforded to other privileges not protected in the Constitution; for example, in *United States v. In Re: Search of Law Office*, 341 F.3d 404, 407 (5th Cir. 2003), the privilege holder was allowed an opportunity to identify documents protected under the attorney-client privilege at the point the search was completed. Although the Supreme Court in *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977), distinguished between the receipt of privileged information by an agent of the Executive and by the prosecution team in the context of a civil rights claim based on a Sixth Amendment violation, the nature of the considerations presented by a violation of the Speech or Debate Clause is different. If the testimonial privilege under the Clause is absolute and there is no distinction between oral and written materials within the legislative sphere, then the non-disclosure privilege for written materials described in *Brown & Williamson*, 62 F.3d at 421, is also absolute, and thus admits of no balancing, *cf. United States v. Nixon*, 418 U.S. 683 (1974); *Moody v. IRS*, 654 F.2d 795, 799 (D.C. Cir. 1981). The compelled disclosure of legislative materials to FBI agents executing the search warrant was not unintentional but deliberate — a means to uncover responsive non-privileged materials.

There would appear to be no reason why the Congressman's privilege under the Speech or Debate Clause cannot be asserted at the outset of a search in a manner that also protects the interests of the Executive in law enforcement. To the extent the Executive expresses concern about the burdens placed upon the district court and attendant delay during judicial review of seized materials, the Remand Order illustrates a streamlined approach by narrowing the number of materials the district court may be required to review. The historical record utterly devoid of Executive searches of congressional offices suggests the

17

imposition of such a burden will be, at most, infrequent. Regardless of whether the accommodation is by initially sealing the office to be searched before the Member is afforded an opportunity to identify potentially privileged legislative materials prior to any review by Executive agents or by some other means, seriatim initial reviews by agents of the Executive of a sitting Member's congressional office are inconsistent with the privilege under the Clause. How that accommodation is to be achieved is best determined by the legislative and executive branches in the first instance.[5]   Although the court has acknowledged, where it is not a Member who is subject to criminal proceedings, that the privilege might be less stringently applied when inconsistent with a sovereign interest, *see Brown & Williamson*, 62 F.3d at 419-20; *supra* note 4, this observation has no bearing here and is relevant, if at all, to the question of remedy for a violation, not the determination of whether a violation has occurred.

Accordingly, we hold that a search that allows agents of the Executive to review privileged materials without the Member's consent violates the Clause. The Executive's search of the Congressman's paper files therefore violated the Clause, but its copying of computer hard drives and other electronic media is constitutionally permissible because the Remand Order affords the Congressman an opportunity to assert the privilege prior to disclosure of privileged materials to the Executive; the

---

[5] *See* Amicus Br. of Hon. Abner J. Mikva at 18; Amicus Br. of Scott Palmer, Elliot S. Berke, Reid Stuntz, and Philip Kiko (former senior congressional staffers) at 26. *Compare* Amicus Br. of Thomas S. Foley, Newt Gingrich and Robert H. Michel (former Speakers of the U.S. House of Representatives) at 27-30 (suggesting specific alternative procedures for search of congressional offices); Amicus Br. of Stanley M. Brand et al. (former counsel to the U.S. House of Representatives and the Senate and scholars) at 28-29 (same).

18

Executive advises, *see* Appellee's Br. at 14, 62-63, that no FBI agent or other Executive agent has seen any electronic document that, upon adjudication of the Congressman's claim of privilege, may be determined by the district court to be privileged legislative material.

**III.**

The question remains what the appropriate remedy is under Rule 41(g) for a violation of the Speech or Debate Clause. The 1989 Advisory Committee Notes to Rule 41(e)[6] state:

> No standard is set forth . . . to govern the determination of whether property should be returned to a person aggrieved either by an unlawful seizure or by deprivation of the property . . . . If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable. But, if the United States' *legitimate interests* can be satisfied even if the property is returned, continued retention of the property would become unreasonable.

(emphasis added). Our task is to determine how to reconcile the scope of the protection that is afforded to a Member of Congress under the Speech or Debate Clause with the Executive's Article II responsibilities for law enforcement.

Clearly a remedy in this case must show particular respect to the fact that the Speech or Debate Clause "reinforces the

_____

[6] As a result of the 2002 Amendments, Rule 41(e) now appears with minor stylistic changes as Rule 41(g). *United States v. Albinson*, 356 F.3d 278, 279 n.1 (3d Cir. 2004).

19

separation of powers and protects legislative independence."
*Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 8 (D.C.
Cir. 2006) (en banc) (collecting cases). Congressman Jefferson
argued in the district court that he has suffered irreparable harm
with no adequate remedy available at law because the violation
of his constitutional rights cannot be vindicated by an action at
law or damages or any other traditional relief.[7] On appeal,
however, the Congressman makes no claim that the functioning
of his office has been impaired by loss of access to the original
versions of the seized documents; the Remand Order directed
that he be given copies of all seized documents. Remand Order
of July 28, 2007. Perhaps more to the point, however, he
contends that complete return of all seized materials is the only
remedy that vindicates the separation of powers principles
underlying the Speech or Debate Clause and serves as an
appropriate deterrent to future violations.

Although the search of Congressman Jefferson's paper files
violated the Speech or Debate Clause, his argument does not
support granting the relief that he seeks, namely the return of all
seized documents, including copies, whether privileged or not.
Taking his assertions in reverse order, such relief is unnecessary
to deter future unconstitutional acts by the Executive. There is
no indication that the Executive did not act based on a good faith
interpretation of the law, as reflected in the district court's prior

---

[7] *See In Re: Search of Law Office*, 341 F.3d at 414 & n.49
(holding that district court must find "at the very least, a substantial
showing of irreparable harm" in order to suppress seized evidence
under Rule 41(e), citing *G.M. Leasing Corp. v. United States*, 429
U.S. 338, 359-60 (1977)); *Ramsden v. United States*, 2 F.3d 322, 325
(9th Cir. 1993) ("agree[ing] with the Fifth, Eighth, and Tenth Circuits
that a district court must determine whether a movant will suffer
irreparable injury when considering whether to reach the merits of a
preindictment Rule 41(e) motion").

20

approval and later defense of the special procedures set forth in the warrant affidavit. While the Fourth Amendment issue is not before us, the Supreme Court's instruction in *United States v. Leon*, 468 U.S. 897 (1984), is relevant to the extent the Congressman invokes deterrence as a rationale for the remedy he seeks under Rule 41(g). In addressing application of the exclusionary rule in the context of the Fourth Amendment, the Supreme Court pointed out in *Leon* that "[p]articularly when law enforcement officers have acted in objective good faith [on a warrant issued by a neutral magistrate] or their transgressions have been minor," the possible benefit from exclusion, in terms of future deterrence, is limited, 468 U.S. at 907-08. Additionally, with respect to concern about future actions by the Executive, this is the only time in this Nation's history that the Executive has searched the office of a sitting Member of Congress. Our holding regarding the compelled disclosure of privileged documents to agents of the Executive during the search makes clear that the special procedures described in the warrant affidavit are insufficient to protect the privilege under the Speech or Debate Clause. This too should ameliorate concerns about deterrence.

At the same time, the remedy must give effect not only to the separation of powers underlying the Speech or Debate Clause but also to the sovereign's interest under Article II, Section 3 in law enforcement. The following principles govern our conclusion. The Speech or Debate Clause protects against the compelled disclosure of privileged documents to agents of the Executive, but not the disclosure of non-privileged materials. Its "shield does not extend beyond what is necessary to preserve the integrity of the legislative process," *Brewster*, 408 U.S. at 517, and it "does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions," *id.* at 528. This particular search needlessly disrupted the functioning of the Congressman's office by allowing agents of the Executive to

21

view legislative materials without the Congressman's consent, even though a search of a congressional office is not prohibited *per se*. Still, the Congressman makes no claim in his brief, much less any showing, that the functioning of his office has been disrupted as a result of not having possession of the original versions of the non-privileged seized materials. Most important, to construe the Speech or Debate Clause as providing an absolute privilege against a seizure of non-privileged materials essential to the Executive's enforcement of criminal statutes pursuant to Article II, Section 3 on no more than a generalized claim that the separation of powers demands no less would, as the Supreme Court has observed, albeit as to a qualified privilege, "upset the constitutional balance of 'a workable government.'" *Nixon*, 418 U.S. at 707 (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring)). The Supreme Court has instructed that the Clause is to be applied "in such a way as to insure the independence of the legislature without altering the historic balance of the three co-equal branches of Government." *Brewster*, 408 U.S. at 508; *see Fields*, 459 F.3d at 9.

Applying these principles, we conclude that the Congressman is entitled, as the district court may in the first instance determine pursuant to the Remand Order, to the return of all materials (including copies) that are privileged legislative materials under the Speech or Debate Clause. Where the Clause applies its protection is absolute. For the reasons stated, absent any claim of disruption of the congressional office by reason of lack of original versions, it is unnecessary to order the return of non-privileged materials as a further remedy for the violation of the Clause. The Congressman has suggested no other reason why return of the non-privileged documents is required pursuant to Rule 41(g), and, in any event, it is doubtful that the court has jurisdiction to entertain such arguments following the return of the indictment. Unlike the Congressman's request for the return

22

of legislative materials protected by the Speech or Debate Clause, the further claim for the return of all non-privileged materials is not independent of the criminal prosecution against him, especially if the legality of the search will be a critical issue in the criminal trial. *See In re 3021 6th Ave. N.*, 237 F.3d at 1041 (citing *DiBella v. United States*, 369 U.S. 121, 131-32 (1962)); *In re Search of the Premises Known as 6455 South Yosemite*, 897 F.2d 1549, 1554-56 (10th Cir. 1990); *United States v. Mid-States Exchange*, 815 F.2d 1227, 1228 (8th Cir. 1987) (per curiam). We agree with the Ninth Circuit's holding that the 1989 amendment to Rule 41, eliminating the coupling of a motion for the return of property under Rule 41 and a motion to exclude evidence at trial, FED. R. CRIM. P. 41(g), does not affect *DiBella*'s controlling force, which balanced the individual and government interests and their relationship to trial delays or disruptions, 369 U.S. at 124, 126, 129; *see, e.g.*, *In re 3021 6th Ave. N.*, 237 F.3d at 1041. *See generally* 15B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3918.4 (2d ed. 1992). Although the Congressman's further request is solely for the return of property, his Rule 41(g) motion is "tied to a criminal prosecution *in esse* against the movant," *DiBella*, 369 U.S. at 132; it is of no moment that the indictment was filed in another district, *id*. The fact that the prosecution has commenced "will afford . . . adequate opportunity to challenge the constitutionality of the search of his . . . office," and hence "there is now no danger that the [Executive] might retain [the Congressman's] property indefinitely without any opportunity . . . to assert on appeal his right to possession"; hence there is "no basis upon which to grant piecemeal review of [his further] claim [for non-privileged materials]." *United States v. Search Warrant for 405 N. Wabash, Suite 3109*, 736 F.2d 1174, 1176 (7th Cir. 1984).

    Accordingly, we hold that the Congressman is entitled to

23

the return of all legislative materials (originals and copies) that are protected by the Speech or Debate Clause seized from Rayburn House Office Building Room 2113 on May 20-21, 2006. Further, as contemplated by the warrant affidavit, *see* Thibault Aff. ¶¶ 137-38, the FBI agents who executed the search warrant shall continue to be barred from disclosing the contents of any privileged or "politically sensitive and non-responsive items," *id.* ¶ 138, and they shall not be involved in the pending prosecution or other charges arising from the investigation described in the warrant affidavit other than as regards responsiveness, *id.*

KAREN LECRAFT HENDERSON, *Circuit Judge*, concurring in the judgment:

When all of the brush is cleared away, this case presents a simple question: can Executive Branch personnel—here, special agents of the Federal Bureau of Investigation—execute a search warrant directed to the congressional office of a Member of the Congress (Member) without doing violence to the Speech or Debate Clause (Clause) set forth in Article I, Section 6, Clause 1 of the United States Constitution?[1]  The limited United States Supreme Court precedent regarding the applicability of the Clause in the criminal context makes one thing clear—the Clause "does not purport to confer a general exemption upon Members of Congress from liability *or process* in criminal cases.  Quite the contrary is true." *Gravel v. United States*, 408 U.S. 606, 626 (1972) (emphasis added).  It appears that neither the Supreme Court nor any inferior court has addressed the question as I view it and the single holding from our court on which the majority almost exclusively relies to answer the question in the negative decides only the Clause's applicability to a *civil* subpoena obtained by *private* parties who sought certain files in the possession of a congressional subcommittee. *See Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408  (D.C. Cir. 1995) (Clause barred enforcement of subpoenas *duces tecum* issued to two members of House Subcommittee on Health and Environment); Maj. Op. at 11–13 (relying on *Brown & Williamson* because "[t]he Supreme Court has not spoken").[2]

---

[1]The Clause provides that "for any *Speech or Debate* in either House" "[t]he Senators and Representatives" "shall not be *questioned* in any other Place."  U.S. Const. Art. I, § 6, cl. 1 (emphases added).

[2]Contrary to the majority's assertion that "[t]he Executive does not argue" that the Clause's "bar on compelled disclosure" "does not apply in the criminal as well as the civil context," Maj. Op. at 12, the government expressly argues that "[t]he execution of a search warrant

2

But *Brown & Williamson*'s brief comments regarding the Clause in the criminal context—which comments importantly acknowledge the Clause's less categorical scope in that context[3]—remain dicta no matter how "profound." Maj. Op. at 13. I believe the question can be directly answered "yes" without resort to dicta or any other indirect support or theory. Accordingly, while I concur in the judgment which affirms the district court's denial of Representative William J. Jefferson's (Rep. Jefferson) Rule 41(g) motion, I do not agree with the majority's reasoning and distance myself from much of its dicta.

The Supreme Court has made clear that the two elements of the privilege—"Speech or Debate" and "question[ing]"—must "be read broadly to effectuate its purposes." *United States v. Johnson*, 383 U.S. 169, 180 (1966). As our court has noted, the "touchstone" of the Clause "is interference with legislative activities," *see Brown & Williamson*, 62 F.3d at 421; the Clause is therefore "designed to protect Congressmen 'not only from the consequences of litigation's results but also from the burden of defending themselves' " for their legislative actions, *Helstoski v. Meanor*, 442 U.S. 500, 508 (1979) (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967)); *see also Johnson*, 383 U.S.

---

. . . is far removed from the core concerns animating the Clause," Appellee's Br. at 44, and therefore "the protections of the Clause . . . cannot extend to precluding search warrants," *id*. at 45. With respect to our precedent, moreover, the government asserts that "*Brown & Williamson* itself distinguished between civil subpoenas and criminal proceedings, and limited its holding to the former." *Id*. at 47. Finally, the government repeatedly emphasizes the consequences for law enforcement if a non-disclosure rule is recognized in the criminal context. *See id*. at 37–38.

[3] *See infra* pp. 10–11.

3

at 179 (Clause "protect[s] [the legislature] against possible prosecution by an unfriendly executive and conviction by a hostile judiciary"). Still, the "speech or debate privilege was designed to preserve legislative *independence*, not supremacy." *United States v. Brewster*, 408 U.S. 501, 508 (1972) (emphasis added).

There is no dispute that the *issuance* of the search warrant for Rep. Jefferson's congressional office does not violate the Clause. *See* Maj. Op. at 10. The "Speech or Debate" protected by the Constitution includes only "legitimate legislative activity," *see, e.g., Tenney v. Brandhove*, 341 U.S. 367, 376 (1951), and "[t]aking a bribe is, obviously, no part of the legislative process or function; it is not a legislative act," *Brewster*, 408 U.S. at 526. Here, the warrant sought only "fruits, instrumentalities and evidence of violations of" various federal bribery and fraud statutes involving Rep. Jefferson,[4] *see* Warrant Aff., *reprinted in* Joint Appendix (JA) at 7; Sealed Appendix (SA) 18–25, which plainly are outside the bounds of protected legislative activities, *see Brewster*, 408 U.S. at 526. Having found "probable cause to believe that" Rep. Jefferson's congressional office "contains property constituting evidence of the commission of . . . bribery of a public official, . . . wire fraud[,] . . . bribery of a foreign official . . . [and] conspiracy to commit" these crimes and having issued a search warrant aimed solely at such evidence, *see* Warrant Aff. at JA 87–88 (internal citations omitted), the district court ensured that the warrant encompassed only unprivileged records. And it is, of course, the

---

[4]They include 18 U.S.C. § 201 (bribery of public official), 18 U.S.C. §§ 1343, 1346 and 1349 (wire fraud and deprivation of honest services), 15 U.S.C. §§ 78dd-1 *et seq*. (bribery of foreign official) and 18 U.S.C. § 371 (conspiracy to commit bribery, wire fraud and bribery of foreign official). *See* Warrant Aff. at JA 7.

4

judiciary, not the executive or legislature, that delineates the scope of the privilege. *See United States v. Nixon*, 418 U.S. 683, 703–04 (1974) (citing Speech or Debate Clause cases to illustrate judicial power to define scope of executive privilege); *cf. In re Search of Rayburn House Office Bldg. Room No. 2113* (*Rayburn*), 432 F. Supp. 2d 100, 116 (D.D.C. 2006) ("A federal judge is not a mere rubber stamp in the warrant process, but rather an independent and neutral official sworn to uphold and defend the Constitution.").

Notwithstanding the search warrant sought only unprivileged records, Rep. Jefferson's congressional office, as the warrant itself manifests,[5] also contained records, paper and electronic, of legislative acts to which the Clause's protection extends. Execution of the warrant necessarily required the FBI agents to separate unprivileged responsive records from privileged records of legislative acts. It is this aspect of the warrant's execution that Rep. Jefferson claims violated the Clause because it constituted impermissible "question[ing]" of him.

---

[5]The warrant includes "special procedures in order to minimize the likelihood that any potentially politically sensitive, non-responsive items in the Office will be seized" by "identify[ing] information that may fall within the purview of the Speech or Debate Clause . . . or any other pertinent privilege." Warrant Aff. at JA 79; *see also id.* at JA 80–87 (directing search team to seize only records responsive to warrant and to provide potentially privileged records to Rep. Jefferson and to district court to determine privilege *vel non*); Search Warrant (May 21, 2006), *reprinted in* JA at 3 (incorporating Warrant Affidavit by reference).

5

*See* Appellant's Br. at 13–22; U.S. Const. Art. I, § 6, cl. 1. I disagree.[6]

The execution of a valid search warrant is an "exercise of executive power," *United States v. Grubbs*, 126 S. Ct. 1494, 1501 (2006) (internal quotation omitted), and, as noted, the Supreme Court has made clear that the Clause "does not purport to confer a general exemption upon Members of Congress" from criminal process, *Gravel*, 408 U.S. at 626.[7] Nevertheless, my

---

[6]The majority is incorrect in suggesting that I "fail[] to distinguish between the lawfulness of searching a congressional office pursuant to a search warrant and the lawfulness of the manner in which the search is executed." Maj. Op. at 14. The distinction is what these fourteen pages discuss. The warrant was lawfully issued because it does not seek evidence of "[a] legislative act . . . generally done in Congress in relation to the business before it," *United States v. Brewster*, 408 U.S. 501, 512 (1972), but rather evidence of crimes, *see supra* pp. 3–4. Unlike the majority, however, I believe that neither the Supreme Court nor *Brown & Williamson* holds that the Clause precludes Executive Branch execution of a search warrant. *See infra* pp. 6–13.

[7]Rep. Jefferson places considerable emphasis on the fact that "the executive branch executed a search warrant on the legislative office of a sitting Member of Congress for the first time in the history of the United States." Appellant's Br. at 1. That does not mean that the Executive Branch is without power to execute such a warrant; it just as likely indicates that never before has the Executive Branch found its use necessary. Indeed, this unique moment in our nation's history is largely of the Representative's own making. For months, the government repeatedly tried and failed—due in part to Rep. Jefferson's invocation of his Fifth Amendment right—to obtain records in his congressional office via a series of subpoenae *duces tecum*. *See* SA at 54–74. Only after failing to obtain the records

6

colleagues conclude that the holding in *Brown & Williamson*,
*see* 62 F.3d at 418–21, establishes that "the disclosure of
legislative material" during the execution of a search warrant,
Maj. Op. at 12, amounts to prohibited "question[ing]" because
the Clause embodies a broad "non-disclosure privilege," Maj.
Op. at 11, that safeguards the absolute confidentiality of
legislative records even from criminal process.  With respect, I
believe they vastly over-read *Brown & Williamson*.  That
holding prohibited the production of certain records in a
congressional subcommittee's possession in response to a civil
subpoena.  *See Brown & Williamson*, 62 F.3d at 418–19 (citing
*MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856,
857–59 (D.C. Cir. 1988)).  It found no functional difference
between compelling a Member to be "questioned" orally and
compelling him to produce documents in response to a
subpoena.  *See id.* at 420–21.

Yet, as the district court noted, "the difference between a
warrant and a subpoena is of critical importance here."
*Rayburn*, 432 F. Supp. 2d at 111.  Answering a civil subpoena
requires the individual subpoenaed to affirmatively act; he either
produces the testimony/documents sought or challenges the
subpoena's validity.  In contrast, a search warrant requires that
the individual whose property is to be searched do nothing

---

through investigative means within Rep. Jefferson's ability to control
did the government turn to a search warrant, which minimizes Rep.
Jefferson's role—and his Fifth Amendment right.  Moreover, Rep.
Jefferson's proposed method of warrant execution—first sealing his
office and allowing him to separate privileged from non-privileged
records—effectively eliminates the distinction between a search
warrant and a subpoena.  His proposal would resurrect his Fifth
Amendment right because presumably he would respond as he did to
the subpoenae *duces tecum*.  *See infra* pp. 6–7.

7

affirmative. Instead, the search must first meet the requirements of the Fourth Amendment via the prior approval of "a neutral and detached magistrate," *Johnson v. United States*, 333 U.S. 10, 14 (1948), and, upon that official's finding of probable cause, the warrant "authorizes Government officers to seize evidence without requiring enforcement through the courts," *United States v. Miller*, 425 U.S. 435, 446 n.8 (1976). The property owner is not required to respond either orally or by physically producing the property, including records. *Cf. Johnson v. United States*, 228 U.S. 457, 458 (1913) (under Fifth Amendment "[a] party is privileged from producing the evidence, but not from its production"). The FBI agents' execution of the warrant on Rep. Jefferson's congressional office did not require the latter to do anything and accordingly falls far short of the "question[ing]" the court in *Brown & Williamson* found was required of a Member in response to a civil subpoena.

Moreover, as the majority recognizes, *see* Maj. Op. at 11, in *Brown & Williamson* we relied heavily on the Clause's purpose—shielding the legislative process from disruption—in reading the Clause's prohibition of "question[ing]" broadly to protect the "confidentiality," *see Brown & Williamson*, 62 F.3d at 417–21, of records from the reach of a civil subpoena. Noting that the Speech or Debate "privilege is not designed to protect the reputations of congressmen but rather the functioning of Congress," *id*. at 419, the court concluded that document production threatened to distract the two Members from their legislative duties, *see id*. at 418 (quoting *MINPECO*, 844 F.2d at 859). We declared that "[d]ocumentary evidence can certainly be as revealing as oral communications," providing "clues as to what Congress is doing, or might be about to do," *id*. at 420, and thereby potentially defeating the Clause's purpose to "insulate Members of Congress from distractions that

8

'divert their time, energy, and attention from their legislative tasks,' " *id*. at 421 (quoting *MINPECO*, 844 F.2d at 859 (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975))). Given this purpose, we concluded that the Clause "permit[s] Congress to insist on the confidentiality of investigative files" and therefore barred enforcement of the subpoena. *Id*. at 420.

*Brown & Williamson*'s non-disclosure rule, however, does not extend to criminal process. Although the presence of FBI agents executing a search warrant in a Member's office necessarily disrupts his routine, the alternative procedure proposed by Rep. Jefferson—sealing the office and permitting him to first label his records (paper and electronic) as privileged and unprivileged—would no doubt take much more of his time. Moreover, the FBI agents responsible for the search of Rep. Jefferson's congressional office went to great lengths to minimize disruption[8] by, *inter alia*, executing the warrant when the Congress was not meeting, imaging computer hard drives rather than searching the computers, using specific search terms for both paper and electronic records and, most important, creating Filter Teams—one for paper records and one for electronic records—and ensuring subsequent *in camera* judicial review to minimize exposure to privileged records. *See* Warrant Aff. at JA 79–87. The Filter Teams consisted of FBI agents with no prior "role or connection to the investigation" of Rep. Jefferson and whose "roles in the investigation [were] confined to . . . review[ing] the . . . records seized from the Office to

---

[8]"[T]he physical search of the Office [was] conducted by Special Agents . . . [with] no substantive role in the investigation" of Rep. Jefferson. Warrant Aff. at JA 80. These " 'non-case agents' " reviewed the records in Rep. Jefferson's office only "to determine if they [were] responsive to the list of items" in the warrant, thereafter "deliver[ing] the seized . . . records to" the Filter Teams. *Id*.

9

validate that they are responsive to the list" contained in the warrant. *Id.* at 81 (describing filtering procedures for paper records); *id.* at 84–85 (electronic records). By creating the Filter Teams and "[b]y requiring judicial approval before any arguably privileged documents could be shared with the prosecution team, the search procedures as a whole eliminated any realistic possibility that evidence of Rep. Jefferson's legislative acts would be used against him." Appellee's Br. at 26.

Disruption aside, it is well settled that a Member is subject to criminal prosecution and process. *See Brewster*, 408 U.S. at 516 (Clause's "purpose [is not] to make Members of Congress super-citizens, immune from criminal responsibility"); *Gravel*, 408 U.S. at 626.[9] The core activity protected by the Clause—speech in either chamber of the Congress—is a public act. In essence, therefore, what the Clause promotes is the Member's ability to be open in debate—free from interference or restriction—rather than any secrecy right. That candor is the animating purpose of the Clause is plain from the historical roots of the privilege. In drafting the Speech or Debate Clause, the Framers drew upon English history and the "long struggle for parliamentary supremacy" against "Tudor and Stuart monarchs during which successive monarchs utilized the criminal and civil law to suppress and intimidate critical legislators" from publicly opposing the Crown. *Johnson*, 383 U.S. at 178; *see also Tenney*, 341 U.S. at 372 ("The privilege of legislators to be free from arrest or civil process for what they do or say in legislative

---

[9]*Cf.* U.S. Const. Art. I, § 6, cl. 1: "The Senators and Representatives . . . shall in all Cases, *except* Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same . . . ." (emphasis added).

10

proceedings has taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries.").

And while it is true that, once it attaches, the Clause "is an absolute bar to interference" with legislators, *Eastland*, 421 U.S. at 503 (citing *Doe v. McMillan*, 412 U.S. 306, 314 (1973)), recognizing that the privilege is absolute once it attaches begs the question whether the Clause attaches to begin with.[10]  Significantly, in *Brown & Williamson* we expressly recognized that the Clause's "testimonial privilege might be less stringently applied when inconsistent with a sovereign interest," such as the conduct of criminal proceedings.  62 F.3d at 419–20 (distinguishing *Gravel*'s criminal context from civil subpoena). My colleagues qualify *Brown & Williamson*'s reference to *Gravel*, noting "it [was] not a Member who [was] subject to criminal proceedings" or process in *Gravel*.  Maj. Op. at 17. Yet, to the extent the majority reads *Brown & Williamson* to limit *Gravel* to process served on a congressional aide during a criminal investigation of a third party, that reading mischaracterizes both *Brown & Williamson* and *Gravel*. *Gravel*'s holding that the Clause does not "immunize Senator or

_____

[10]In concluding that "there is no reason to believe that the [non-disclosure rule] does not apply in the criminal as well as the civil context," Maj. Op. at 12, my colleagues first acknowledge that "*Brown & Williamson* involved civil litigation," *id*. at 13. Nonetheless they believe *Brown & Williamson*'s discussion of the Clause was "more profound," applying equally in the criminal context merely because it "repeatedly referred to the functioning of the Clause in criminal proceedings." *Id*.  Likewise, my colleagues' notion that *Brown & Williamson* applies to criminal matters because the Clause's "bar on compelled disclosure is absolute," *id*. at 12, again begs the question whether *Brown & Williamson*'s non-disclosure rule applies to criminal matters at all.

11

aide from testifying at trials or grand jury proceedings involving third-party crimes" is replete with observations that the Clause "provides no protection for criminal conduct . . . performed at the direction of the [Member] . . . or done without his knowledge" by an aide. *Gravel*, 408 U.S. at 622. *Gravel* makes unmistakably clear that a Member—not just a staffer—is subject to criminal liability and process, *see*, *e.g.*, *Gravel*, 408 U.S. at 626 (Clause "does not privilege *either Senator or aide* to violate an otherwise valid criminal law in preparing for or implementing legislative acts" (emphasis added)), so that *Brown & Williamson*'s reference to "*Gravel*'s sensitivities to the existence of criminal proceedings against persons other than Members of Congress" does no more than describe the *Gravel* facts, *Brown & Williamson*, 62 F.3d at 419. Indeed, *Gravel* "refus[ed] to distinguish between Senator and aide in *applying* the Speech or Debate Clause," *Gravel*, 408 U.S. at 622 (emphasis added), finding instead the existence of criminal proceedings dispositive, *id*. at 626. As *Gravel* noted, his aide's privilege derives from the Member's. *Id*. at 616–17 (describing aide as Member's "alter ego[]"). Because *Gravel* stresses the significance of criminal proceedings, rather than their target, and because his aide can invoke the Clause only if the Member can do so, the majority is wrong in maintaining that *Gravel*'s language as construed in *Brown & Williamson* is limited to "third-party" crime.[11]

---

[11]Unlike the *Brown & Williamson* dicta, *Gravel*'s discussion of the Clause's applicability to Members should direct our analysis. *See United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) (" 'carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative' " (quoting *Sierra Club v. EPA*, 322 F.3d 718, 724 (D.C. Cir. 2003))).

12

Moreover, as the government points out, to conclude that the Clause's shield protects against *any* Executive Branch exposure to records of legislative acts would jeopardize law enforcement tools "that have never been considered problematic." Appellee's Br. at 37; *see also Rayburn*, 432 F. Supp. 2d at 110 ("Carried to its logical conclusion, this argument would require a Member . . . to be given advance notice of any search of his property, including property outside of his congressional office, such as his home or car, and further that he be allowed to remove any material he deemed to be covered by the legislative privilege prior to a search."). If Executive Branch exposure alone violated the privilege, "agents . . . could not conduct a voluntary interview with a congressional staffer who wished to report criminal conduct by a Member or staffer, because of the possibility . . . that the staffer would discuss legislative acts in . . . describing the unprivileged, criminal conduct." Appellee's Br. at 38. Such a rule would also "presumably apply to surveillance of a Member or staffer who might discuss legislative matters with another Member or staffer." *Id*. Furthermore, "[d]epriving the Executive of the power to *investigate* and prosecute and the Judiciary of the power to punish bribery of Members of Congress is unlikely to enhance legislative independence." *Brewster*, 408 U.S. at 525 (emphasis added); *see id*. at 524–25 (reasoning that "financial abuses by way of bribes, perhaps even more than Executive power, would gravely undermine legislative integrity and defeat the right of the public to honest representation"). On the other hand, limiting the law enforcement tools that may be used to investigate Members does undermine the "legitimate needs of the judicial process," specifically, the "primary constitutional duty of the Judicial Branch to do justice in criminal prosecutions." *Nixon*, 418 U.S. at 707. Recognizing the strength of these constitutional interests, the Supreme Court limited the scope of executive privilege—which is

13

unquestionably a confidentiality rule—by permitting *in camera* judicial review of executive records to meet "[t]he need to develop all relevant facts" in a criminal prosecution. *Id.* at 709. The majority, in barring Executive Branch execution of a search warrant—and, by extension, other common investigatory tools—based on mere exposure to privileged records, checks the Judicial Branch as well. *Cf. Brewster*, 408 U.S. at 508 ("speech or debate privilege was designed to preserve legislative *independence*, not supremacy") (emphasis added).[12]

In sum, I believe the Executive Branch's execution of a search warrant on a congressional office—with its unavoidable but minimal exposure to records of legislative acts—does not constitute "question[ing]" within the meaning of the Speech or

---

[12]Again in dicta, *Brown & Williamson* rejected the Third Circuit's holding in *In re Grand Jury Investigation*, 587 F.2d 589 (3d Cir. 1978), that the Clause merely prohibits evidentiary use of records of legislative acts but not their disclosure, concluding instead that the interest in protecting the functioning of the legislature may permit the Congress "to insist on the confidentiality of investigative files," *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 420 (D.C. Cir. 1995). And again the criminal context distinguishes *Brown & Williamson*'s dicta from this case. For example, in *Brewster*, a case involving the criminal prosecution of a Member, the Supreme Court described the violation of the Clause that occurred in *United States v. Johnson*, 383 U.S. 169 (1966)—another criminal case—as arising from "the *use* of evidence" of a legislative act to support the indictment. *Brewster*, 408 U.S. at 510 (emphasis added). According to *Brewster*, "a Member of Congress may be prosecuted under a criminal statute provided that the Government's case does not rely on legislative acts or the motivation for legislative acts." *Id.* at 512. Thus, in the criminal context the Supreme Court has indicated that it is the Executive Branch's evidentiary use of legislative acts, rather than its exposure to that evidence, that violates the Clause.

14

Debate Clause. On this reading of the Clause, Rep. Jefferson remains subject to the same criminal process that applies to his constituents. *See Gravel*, 408 U.S. at 626. As "[t]he laws of this country allow no place or employment as a sanctuary for crime," *Williamson v. United States*, 207 U.S. 425, 439 (1908) (quoting *King v. Willkes*, 2 Wils. 151 (1763)), I would conclude that the Speech or Debate Clause does not bar the Executive Branch's execution of a search warrant on a congressional office and, accordingly, deny Rep. Jefferson's Rule 41(g) motion.[13]

---

[13]At trial Rep. Jefferson may assert Speech or Debate Clause immunity to bar the use of records he claims are privileged. *Cf. Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 13–16 (D.C. Cir. 2006) (affirming denial of Member's motion to dismiss on Speech or Debate Clause ground but noting that even "[w]hen the Clause does not preclude suit altogether," it "may preclude some relevant evidence") (en banc), *cert. denied, Office of Sen. Mark Dayton v. Hanson*, 127 S. Ct. 2018, 2020 (2007); *Johnson*, 383 U.S. at 185 ("With all references to [legislative material] eliminated [from the indictment], we think the Government should not be precluded from a new trial on this count, thus wholly purged of elements offensive to the Speech or Debate Clause."). At this stage, however, Rep. Jefferson is entitled only to copies of the records seized by the government and judicial review of any record he claims is privileged, as our July 28, 2006 order provides. *See United States v. Rayburn House Office Bldg., Room 2113*, No. 06-3105 (D.C. Cir. July 28, 2006). To the extent the majority suggests that—if a Member can show disruption of his legislative activities—the government may be required to return *non-privileged* material to remedy a violation of the Clause, Maj. Op. at 21–22, thereby potentially depriving the Executive Branch of records bearing on criminality, it is a suggestion I categorically reject.